UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL R. WHIRL WIND HORSE, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>LINCOLN COUNTY, County at State of South Dakota, in individual and official capacity; KELLIE WASKO, Secretary at Department of Correction, in individual and official capacity; ALEX REYES, Warden at Mike Durfee State Prison, in individual and official capacity; DEB EILERS, Unit Captain at Mike Durfee State Prison, in individual and official capacity; TEANDRE ARCHAMBEAU, Unit Captain at Mike Durfee State Prison, in individual and official capacity; JEFFREY NIXON, Associate Warden at Mike Durfee State Prison, in individual and official capacity; CORY NELSON, Chemical Dependency Coordinator at Mike Durfee State Prison, in individual and official capacity; and BRITTANY SHELBURG, Case Manager at Mike Durfee State Prison, in individual and official capacity,<br><br>Defendants. | 4:24-CV-04148-RAL<br><br><br>OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO TIMELY DEMAND JURY TRIAL AND MOTION FOR NOTICE TO ADVERSE PARTY THAT PLAINTIFF WILL FILE PRELIMINARY INJUNCTION AND TRO, AND 1915A SCREENING |

Plaintiff Michael R. Whirl Wind Horse, Jr. an inmate at the Mike Durfee State Prison (MDSP) filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. This Court granted Whirl Wind Horse's motion for leave to proceed in forma pauperis, and he timely paid his initial filing fee. Doc. 7. He filed a motion to timely demand a jury trial, Doc. 2, and a "Motion for Notice to the Adverse Party that Plaintiff Will File Preliminary Injunction & TRO[,]" Doc. 5 (capitalization in original omitted).

I.      **1915A Screening**

    A.      **Factual Background Alleged by Whirl Wind Horse**

        1.      **Court Claims (Counts I, II, III and IV)**

On November 22, 2022, Whirl Wind Horse was indicted on criminal charges by a grand jury (Case No. CR 22-1101) in the Second Judicial Circuit, Lincoln County, South Dakota. Doc. 1 at 5. Whirl Wind Horse claims that the grand jury lacked probable cause supported by oath or affirmation and that the witnesses were not provided their "Notice of Rights" before they testified in front of the grand jury. Id. Whirl Wind Horse asserts that the witnesses were not provided notice of their right to counsel or the privilege against self-incrimination, which caused the indictment to be tainted by a lack of probable cause. Id. He alleges that Lincoln County initiated and continued the criminal prosecution despite the grand jury lacking probable cause to return an indictment. Id. He alleges that this violated his right under the Fourth Amendment to be free from malicious prosecution. Id. He further claims that Lincoln County was not fair, did not use reasonable legal procedures, and abused its power to convict him in his state criminal case. Id. at 7. On April 3, 2023, Whirl Wind Horse was sentenced to ten years' imprisonment with six years' suspended. Doc. 8 at 3.

Whirl Wind Horse claims that Defendants Lincoln County, South Dakota Department of Corrections Secretary Kellie Wasko, MDSP Warden Alex Reyes, MDSP Unit Captain Deb Eilers, MDSP Unit Captain TeAndre Archambeau, MDSP Associate Warden Jeffrey Nixon, and MDSP Case Manager Brittany Shelburg frustrated, hindered, interfered, and impeded his right to seek post-conviction relief, to challenge his conditions of confinement, and to appeal a decision of the South Dakota Parole Board. Doc. 1 at 6–8. He specifically alleges that Defendants Wasko, Reyes, Eilers, Archambeau, Nixon, and Shelburg denied him ink pens, pencils, and legal papers

when he was confined to administrative segregation following a disciplinary action on July 30, 2024. Id. at 8. He claims that Defendants Wasko, Reyes, Eilers, Archambeau, Nixon, and Shelburg failed to provide an adequate law library or adequate assistance from persons trained in law to assist him with filing his legal pleadings to the state courts in Lincoln County and Bon Homme County. Id. at 6, 8.

Whirl Wind Horse prepared and mailed pro se filings—seeking release from confinement or alleging violation of his civil rights—to the Lincoln County Courthouse and the Bon Homme County Courthouse. Id. at 6. He also mailed certified copies of the filings to the South Dakota Attorney General and the State's Attorney. Id. He alleges that the courts in Lincoln County and Bon Homme County "refuse[d] to file these pleadings to litigate as these courts will not rule or respond to these pro se pleadings to prevent litigation."[1] Id. See also id. at 7; Doc. 8 at 4 (claiming that Whirl Wind Horse filed several post-conviction motions in May 2024 but the circuit court "failed to hear and decide a ruling on these matters").

Because of Defendants' actions, Whirl Wind Horse claims mental anguish, emotional distress, loss of enjoyment of life, loss of wages from work or employment, loss of consortium and companionship, loss of ability to enjoy an occupation of choice, loss of activities of daily living, loss of social leisure activities, loss of earning potential, loss of liberty, loss of time and expenses, injury to his reputation, hindrance or frustrating efforts of legal pleadings in his federal

---

[1] Whirl Wind Horse submitted a supplement containing filings signed by him and including the case citation and caption from his criminal case in Lincoln County. Doc. 8 at 1–12, 18–19. These filings include motions for sentence modification, a motion for progress review report, a motion to correct an illegal sentence, a motion to issue new judgment, and a motion to withdraw guilty plea. Id. Because the included filings are dated after the filing of Whirl Wind Horse's complaint, this Court assumes that these filings are not the filings that were ostensibly rejected by the Lincoln County Courthouse and, instead, assumes that Whirl Wind Horse was merely informing this Court as to what he filed or attempted to file after his case in this Court began.

habeas case (Whirlwind Horse v. Reyes, 4:24-CV-4105-RAL), loss of litigation to post-conviction pleadings in his state criminal case (41CRI22-1101), loss of parole appeal opportunity, and defaulting habeas timing to file petition in state court. Doc. 1 at 5–8; see also Doc. 8 at 4–5 (describing loss of parole appeal and habeas relief).

### 2.    Equal Protection (Count VII)

Whirl Wind Horse claims that Lincoln County is treating him differently than other inmates who are similarly situated. Doc. 1 at 11. He alleges that he was treated differently than a similarly-situated inmate, Nicholas Daniel Graf, who also received the same legal assistance from inmate writ writer Michael Merrival in his post-conviction appeal and his petition for habeas corpus that were filed in the same state court. Id. Whirl Wind Horse mailed filings to the Lincoln County Courthouse, which refused to accept and file his pleadings. Id. Whirl Wind Horse asserts that Lincoln County discriminated against him based on disparate treatment because it had accepted pleadings filed by an inmate who received assistance by the same inmate writ writer. Id. Based on Lincoln County's actions, Whirl Wind Horse claims mental anguish, emotional distress, hinderance to his state habeas petition, loss of administrative appeal against Parole Board, loss of exhaustion, loss of exercising due diligence in legal filings, and loss of favorable legal rulings and hearings in litigation. Id

### 3.    Mental Health Treatment (Count V)

In July and August 2024, Shelburg and MDSP Chemical Dependency Coordinator Cory Nelson did not allow Whirl Wind Horse to participate in CBISA chemical dependency substance abuse treatment classes or Moral Reconation Therapy (MRT) classes. Id. at 9. On August 13, 2024, Whirl Wind Horse had a discretionary parole hearing before the South Dakota Parole Board, and the next day, the CBISA instructor met with him and recommended that he take

CBISA treatment classes in the community. Doc. 8 at 5; see also Doc. 1 at 9 (claiming that the CBISA and MRT counselors recommend that he be referred for outside community treatment classes, which would help to change his mental behavior and provide psychological or psychiatric care for his mental health). But see Doc. 8 at 14 (stating that Whirl Wind Horse was "assessed with no recommendation for CBISA services. [He is] currently referred for aftercare services in the community."). Whirl Wind Horse was placed on waiting lists for MRT classes and dialectical behavior therapy (DBT) classes. Doc. 8 at 5, 15–16. But see id. at 15 (stating that Whirl Wind Horse was "assessed with no recommendation for DBT services"). Nelson and Shelburg did not have a meeting with Whirl Wind Horse to prepare for providing these classes or programs during his incarceration and refused to provide a referral to community treatment after his release on parole supervision. Doc. 1 at 9. Because of Shelburg and Nelson's actions, Whirl Wind Horse claims emotional distress, mental anguish, mental health disorders without psychiatric diagnosing, loss of earned discharge credits (EDCs), loss of skills to rehabilitate from criminal activity and drug use, and an unfavorable decision by the Parole Board denying his request for community release. Id.

### 4.    Failure to Protect (Count VI)

On July 8 and 9, 2024, a riot occurred at the MDSP during a large gang fight. Id. at 10. "Prisoners was [sic] beating and violently assaulting other inmates as these gang members over powered [sic] the prison guards or correctional officers, and kicked down or kicked open doors and ran into the West Crawford Unit." Id. Whirl Wind Horse claims that Defendants Wasko, Reyes, Eilers, Archambeau, Nixon, and Shelburg acted in deliberate indifference to his safety when they failed to keep the prison in order and to protect him from the violent assault. Id. Because of Defendants' actions, Whirl Wind Horse claims mental anguish, emotional distress,

post-traumatic stress disorder, fear of retaliation, undiagnosed schizophrenia, paranoia, psychological injuries, catatonic behavior, nightmares, and anxiety.  Id.

### 5.    Request for Relief

Whirl Wind Horse sues all defendants in their individual and official capacities.  Id. at 2–3.  He claims that Defendants violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments.  Id. at 5–11.  He seeks $5,000,000 as money damages or other "monetary relief including any back and front pay, compensatory damages, punitive damages, prejudgment interest, attorney's fees, and retroactive benefits, and any other benefits, and requesting appropriate relief with monetary damages."  Id. at 12.  He also seeks injunctive relief to prevent future damages and declaratory relief.  Id.

### B.    Legal Standard

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint.  Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995).  Pro se and civil rights complaints must be liberally construed.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted).  Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions."  Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).  Civil rights complaints cannot be merely conclusory.  Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell

6

Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted).  If a complaint does not contain these bare essentials, dismissal is appropriate.  See Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted).  Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)).  Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 556).  Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

### C.    Legal Analysis

#### 1.    Claims Against Pennington County

Whirl Wind Horse sues Pennington County for malicious prosecution in violation of his rights under the Fourth Amendment, violation of his right to access the courts under the First Amendment, violation of his right to due process under the Fourteenth Amendment, and violation of his right to equal protection under the Fourteenth Amendment.  Doc. 1 at 5–7, 11.  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  A municipal government

may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Id.; see also Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987) (finding that "the [governmental] entity's official 'policy or custom' must have 'caused' the constitutional violation" in order for that entity to be liable under § 1983).

Although Whirl Wind Horse claims that "Lincoln County was not fair and reasonable using legal procedures to convict and punish [him] in the criminal prosecution of case CR. 22-1101[,]" he has not alleged that any action was taken in accordance with a policy or custom of Lincoln County. Doc. 1 at 7. Thus, Whirl Wind Horse's claims against Lincoln County are subject to dismissal without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Even if Whirl Wind Horse had alleged an unconstitutional policy or custom, his claims alleging wrongdoing in his state criminal case are barred under Heck v. Humphrey, 512 U.S. 477, 486–87 (1994). Under the Heck bar, "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff must show that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Id. Because Whirl Wind Horse has not alleged that his conviction has been reversed, expunged, invalidated, or impugned by the granting of a writ, he is not entitled to money damages for his allegedly wrongful conviction. See generally Doc. 1. He also cannot seek injunctive relief in the form of release: "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he

seeks is a determination that he is entitled to immediate or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).

Further, even if he identified a policy or custom, his claims against Lincoln County for violation of his rights because employees of the Lincoln County Courthouse refused to file his pleadings prepared by Merrival also fail to state a claim upon which relief may be granted. Doc. 1 at 6–7, 11. He sues Lincoln County because of the actions of employees of the Lincoln County Courthouse. Id. However, clerks and other court personnel of county courthouses in South Dakota, who are appointed by the presiding chief judge, are employees of the State of South Dakota, and the Second Judicial Circuit of South Dakota is a state entity. See S.D. Const. art. V § 11; see also Archer v. Little, 5:23-CV-05002, 2023 WL 3484166, at *6 n.4 (D.S.D. May 16, 2023) (taking judicial notice that county clerk of court employees were employees of the South Dakota Unified Judicial System and thus employees of the State of South Dakota).

### 2.    Official Capacity Claims For Money Damages

Whirl Wind Horse sues Wasko, Reyes, Eilers, Archambeau, Nixon, Nelson, and Shelburg in their individual and official capacities. Doc. 1 at 2–3. These Defendants are employees of the State of South Dakota. Id. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. Id. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. The State of South Dakota has not waived its sovereign immunity. Thus, Whirl Wind Horse's claims against Wasko, Reyes, Eilers, Archambeau, Nixon, Nelson, and Shelburg in their official capacities for money damages are dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### 3. Individual Capacity Claims for Money Damages and Official Capacity Claims for Declaratory and Injunctive Relief

"Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." Brown v Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citation omitted); see also Abdulrazzak v. Smith, 4:17-CV-04058-KES, 2018 WL 4625409, at *16 (D.S.D. Sept. 26, 2018) ("Declaratory and prospective injunctive relief are available as remedies against a state officer in his or her official capacity." (citing Pulliam v. Allen, 466 U.S. 522, 541 (1984)).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Whirl Wind Horse's individual capacity claims must allege that each individual Defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. See id.

### a.    First Amendment Access to the Courts

Whirl Wind Horse sues Wasko, Reyes, Eilers, Archambeau, Nixon, and Shelburg for violating his First Amendment right to access the courts. Doc. 1 at 6, 8. "The Constitution guarantees prisoners a right to access the courts." White v. Kautzky, 494 F.3d 677, 679 (8th Cir. 2007). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977).

To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. Lewis v. Casey, 518 U.S. 343, 349 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting Lewis, 518 U.S. at 353 (footnotes omitted)). The actual injury requirement is a high threshold. Hartsfield v. Nichols, 511 F.3d 826, 831–32 (8th Cir. 2008). "Actual injury" means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348 (citation omitted). "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" Zink v. Lombardi, 783 F.3d 1089, 1108 (8th Cir. 2015) (quoting Lewis, 518 U.S. at 356).

Whirl Wind Horse claims that Wasko, Reyes, Eilers, Archambeau, Nixon, and Shelburg hindered his ability to access the courts because they did not provide an adequate library or assistance from persons trained in the law. Doc. 1 at 6. He also alleges that Wasko, Reyes, Eilers,

Archambeau, Nixon, and Shelburg denied him ink pens, pencils, and legal papers while he was in administrative housing. Id. at 7. While it is unclear how long Whirl Wind Horse was denied access to legal supplies, he alleges that Defendants' actions caused him to receive negative rulings in his federal and state habeas petitions. Id. Thus, Whirl Wind Horse has alleged sufficient facts for his First Amendment access to the courts claims against Wasko, Reyes, Eilers, Archambeau, Nixon, and Shelburg in their individual capacities for money damages and their official capacities for injunctive and declaratory relief to survive § 1915A screening.

### b.    Eighth Amendment Failure to Protect

Whirl Wind Horse sues Wasko, Reyes, Eilers, Archambeau, Nixon, and Shelburg for failure to protect him in violation of his Eighth Amendment rights to be free from cruel and unusual punishment. Doc. 1 at 10. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. "The duty to protect inmates requires that prison officials 'take reasonable measures to abate substantial risks of serious harm, of which the officials are aware.'" Blades v. Schuetzle, 302 F.3d 801, 803 (8th Cir. 2002) (quoting Reece v. Groose, 60 F.3d 487, 491 (8th Cir. 1995)). The plaintiff must show: (1) he was incarcerated under conditions posing a substantial risk of serious harm and (2) prison officials were deliberately indifferent to that risk. Spruce v. Sargent, 149 F.3d 783, 785 (8th Cir. 1998). "Deliberate indifference requires a showing that the official knew the risk existed, but disregarded it." Id. The plaintiff must show that defendants either "actually intended to deprive him or some right, or because they acted with

reckless disregard of his right to be free from violent attacks by fellow inmates." Branchcomb v. Brewer, 669 F.2d 1297, 1298 (8th Cir. 1982) (per curiam).

Here, Whirl Wind Horse does not allege that any of the defendants were working on the day of the riot. He has not claimed that they were deliberately indifferent in their response to the riot. Instead, he vaguely alleges that "Defendants failed to prevented [sic] assaults by inmates by failing to keep the prison in order is a deliberate indifference to [Whirl Wind Horse's] safety and health as they should had [sic] known of the sufficient danger." Doc. 1 at 10. His vague allegation that Defendants "should had [sic] known of the sufficient danger" is insufficient to state a claim for deliberate indifference. Id. Whirl Wind Horse has not alleged any incidents leading up to the prison riot to show that Defendants should have known of the likely occurrence of a riot. "One cannot reasonably infer from the mere fact that a riot erupted that prison staff acted with deliberate indifference beforehand." Wood v. Hughes, 2007 U.S. Dist. LEXIS 97887, at *14 (N.D. Cal. Mar. 20, 2007). Thus, Whirl Wind Horse's Eight Amendment failure to protect claims against Wasko, Reyes, Eilers, Archambeau, Nixon, and Shelburg in their individual capacities are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii).

Personal involvement in the constitutional deprivation is not necessarily required in official capacity claims for injunctive relief. See Ex parte Young, 209 U.S. 123, 157 (1908). Nevertheless, because the alleged constitutional violation is cruel and unusual punishment in violation of the Eighth Amendment and because punishment typically requires intent, some level of subjective knowledge is still required. See Farmer, 511 U.S. at 844. Other courts have held that this subjective component can be met through "the institution's historical indifference" rather than the knowledge held by a specific individual. LaMarca v. Turner, 995 F.2d 1526, 1542 (11th

Cir. 1993); see also Alberti v. Sheriff of Harris Cnty., 978 F.2d 893, 894–95 (5th Cir. 1992) (per

curiam) (finding "that the state knew" of severe overcrowding in Harris County jails); Terry ex

rel. Terry v. Hill, 232 F. Supp. 2d 934, 944 (E.D. Ark. 2002) (considering "the entire state of

Arkansas, including the executive and legislative branches," to determine whether "the State ha[d]

been deliberately indifferent to the needs of pretrial detainees" because defendant, "[i]n his

official capacity, . . . [was] merely a representative of . . . the State of Arkansas in the system of

mental health treatment" (footnote omitted)).

Here, Whirl Wind Horse has not alleged that the MDSP had historical indifference to

conditions that would lead to a riot. Doc. 1 at 10. He claims that Defendants "failed their duty

to protect [him] from violence at the hands of other prisoners as these Defendants failed to

prevented [sic] assaults by inmates by failing to keep the prison in order[,]" which he alleges was

deliberate indifference because "they should had [sic] known of the sufficient danger." Id. There

may have been events leading up to the riot that show that Defendants were deliberately

indifferent and show historical indifference, but Whirl Wind Horse has not alleged such facts.

Thus, Whirl Wind Horse's Eighth Amendment failure to protect claim against Wasko, Reyes,

Eilers, Archambeau, Nixon, and Shelburg in their official capacities for injunctive and declaratory

relief are dismissed without prejudice for failure to state a claim upon which relief may be granted

under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c.    Eighth Amendment Deliberate Indifference to Serious Medical Needs

Whirl Wind Horse alleges claims against Nelson and Shelburg for violation of his Eighth

Amendment right to be free from cruel and unusual punishment because they did not meet with

him and denied him medical care in the form of CBISA and MRT classes. Doc. 1 at 9.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and

wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Est. of Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Here, Whirl Wind Horse claims that he was not provided the specific CBISA and MRT classes that he requested. Doc. 1 at 9. "Prisoners do not have a constitutional right to any particular type of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). See also Dulany, 132 F.3d 1234, 1240 (8th Cir. 1997) (citing Long, 86 F.3d at 765) ("[A]n inmate is not entitled to any particular course of treatment."). There is no indication in the complaint that Whirl Wind Horse was denied all or any other medical treatment for his medical needs. Doc. 1 at 9. Instead, Whirl Wind Horse claims that Nelson and Shelburg did not meet with him to provide the specific CBISA and MRT classes, which he requested. Thus, Whirl Wind Horse's Eighth Amendment deliberate indifference to serious medical needs claims against Nelson and Shelburg in their individual capacities are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Whirl Wind Horse's deliberate indifference to serious medical needs claims against Nelson and Shelburg in their official capacities also fail to state a claim upon which relief may be granted. He has not alleged any historical indifference to meet the intent requirement for Eighth Amendment deliberate indifference to serious medical needs claims. See Framer, 511 U.S. at 844. Thus, Whirl Wind Horse's Eighth Amendment deliberate indifference to serious medical needs claims against Nelson and Shelburg in their individual capacities for money damages and their official capacities for injunctive and declaratory relief are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**d.      Fourteenth Amendment Due Process**

Although Whirl Wind Horse does not specifically cite to the Fourteenth Amendment on his claims for CBISA and MRT classes, his complaint could be construed to allege Fourteenth

16

Amendment due process claims because denial of participation in the CBISA and MRT classes caused him to not receive EDCs for the classes. Doc. 1 at 9; see Doc. 8 at 7–9 (alleging that his due process rights were violated because he was not allowed to participate in CBISA class to earn EDCs). This Court has previously held that § 1983 claims for injunctive relief seeking the award of EDCs are barred under Preiser, 411 U.S. at 500, and Minter v. Bartruff, 939 F.3d 925, 928 (8th Cir. 2019), because the sole federal remedy is a writ of habeas corpus. Scott v. Carpenter, 4:23-CV-4020-RAL, 2023 WL 4249200, at *11 (D.S.D. June 29, 2023) (citing Thares v. Wallinga, 4:21-CV-04107-RAL, 2023 WL 3389030, at *8 (D.S.D. May 11, 2023)). This Court further held that claims seeking money damages for denying EDCs are barred under Heck, 512 U.S. at 486–87, unless the plaintiff has shown "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Scott, 2023 WL 4249200, at *11 (quoting Heck, 512 U.S. at 486–87). Whirl Wind Horse has not made such showing. Thus, to the extent that Whirl Wind Horse's complaint alleges any due process claims about earned discharge credits for money damages or injunctive relief, he has failed to state a claim upon which relief may be granted, and his due process claims for EDCs are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### e.    Fourteenth Amendment Equal Protection

In a supplement submitted to this Court, Whirl Wind Horse claims that his equal protection rights were violated because he is treated differently from others who get to take the CBISA course and earn EDCs. Doc. 8 at 9. The Fourteenth Amendment equal protection clause requires the government to "treat similarly situated people alike," a protection that applies to prisoners. Murphy v. Mo. Dep't of Corr., 372 F.3d at 984 (quoting Rouse v. Benson, 193 F.3d

936, 942 (8th Cir. 1999)). The Eighth Circuit has explained that for a prisoner to prevail on an equal protection claim, he "must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right." Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 815 (8th Cir. 2008) (citations and internal quotation omitted). Here, Whirl Wind Horse claims that he is treated differently than inmates who are registered for the CBISA class. Doc. 8 at 9. However, he has not alleged that the different treatment was based on a suspect classification or a fundamental right.

Whirl Wind Horse also fails to state a class-of-one equal protection claim. A class-of-one equal protection claim was recognized by the Supreme Court in Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam). The Eighth Circuit has applied the class-of-one analysis to a prison setting. Nolan v. Thompson, 521 F.3d 983, 989–90 (8th Cir. 2008). In Nolan, because the plaintiff had not alleged he was a member of a protected class or that his fundamental rights had been violated, the court found he had to show that defendants "systematically and 'intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Id. at 989 (quoting Olech, 528 U.S. at 564). The plaintiff had to "provide a specific and detailed account of the nature of the preferred treatment of the favored class." Id. at 990 (quoting Jennings v. City of Stillwater, 383 F.3d 1199, 1214–15 (10th Cir. 2004)).

Here, Whirl Wind Horse has not alleged sufficient facts for a class-of-one equal protection claim to survive § 1915A screening. Although Whirl Wind Horse makes conclusory allegations that he was treated differently than similarly situated inmates because he was not included in the classes, which would earn him EDCs, he has not alleged any facts showing that the inmates were similarly situated or that the different treatment was intentional or systematic. See Doc. 8 at 9.

18

Thus, Whirl Wind Horse's Fourteenth Amendment equal protection claims for denying participation in CBISA and MRT are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[2]

## II.    Motion to Timely Demand Jury Trial

Whirl Wind Horse filed a motion to timely demand a jury trial. Doc. 2.

On any issue triable of right by a jury, a party may demand a jury trial by:
(1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served; and
(2) filing the demand in accordance with Rule 5(d).

Fed. R. Civ. P. 38(b). Whirl Wind Horse's complaint indicates that he seeks a jury trial. Doc. 1 at 1. Thus, Whirl Wind Horse's Motion to Timely Demand Jury Trial, Doc. 2, duplicates his demand in the complaint and can be denied as moot. See Griepsma v. Andersen, 2021 WL 1734293, at *1 (W.D. Wash. May 3, 2021) (denying motion for jury trial as moot because the complaint already indicated that plaintiff requested a jury trial); Emanuel v. Silber, 2025 WL

---

[2] The Supreme Court of the United States has held that discretionary decision making generally does not provide a basis for a cognizable class-of-one claim. See Enquist v. Or. Dep't of Agric., 553 U.S. 591, 603 (2008) ("There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted."); see also Cartwright v. Krabeenhoft, 2022 U.S. Dist. LEXIS 88215, at *8–9 (D.N.D. May 2, 2022) (collecting cases identifying that discretionary decision making by prison officials is typically not a basis for class-of-one equal protection claims), R&R adopted by 2022 U.S. Dist. LEXIS 112462 (D.N.D. June 24, 2022). The documents from Behavioral Health in Whirl Wind Horse's supplement stated that participation in the treatment classes was determined based on need and that an assessment was completed to determine whether he should be recommended for CBISA, MRT, and DBT classes. See Doc. 8 at 14–15. These documents appear to indicate that the decision to allow participation in the classes was discretionary based on evaluation and need of each prisoner. Because Whirl Wind Horse has failed to allege sufficient facts for his equal protection claim to survive § 1915A screening, this Court need not determine at this time whether the decision to allow participation in treatment classes, which result in award of EDCs, is the type of discretionary decision making that fails to provide a basis for a cognizable constitutional claim.

20105, at *4 (D. Nev. Jan. 1, 2025) (denying motion to demand jury trial as moot when complaint indicated that a jury trial was requested and all colorable claims were dismissed).

III.   **Motion for Notice to Adverse Party that Plaintiff Will File Preliminary Injunction and TRO**

Whirl Wind Horse filed a "Motion for Notice to Adverse Party that Plaintiff Will File Preliminary Injunction & TRO." Doc. 5 at 1 (capitalization in original omitted). His filing advises that he *will* submit a motion for a preliminary injunction and a motion for a temporary restraining order (TRO), not that he is currently requesting a preliminary injunction or TRO. Doc. 5 at 1. Further, his motion indicates that he "will file facts in his affidavit or in a verified complaint showing immediate and irreparable injury, loss, or damages." Id. However, his motion for notice does not request any preliminary injunctive relief. Id. In his complaint, he requests "injunctive relief to prevent future damages[,]" but he does specifically identify what relief he is requesting. Doc. 1 at 12. Thus, Whirl Wind Horse's Motion for Notice to Adverse Party that Plaintiff Will File Preliminary Injunction and TRO, Doc. 5, is denied without prejudice to him filing a proper motion for preliminary injunction or TRO.

IV.   **Conclusion**

Accordingly, it is

ORDERED that Whirl Wind Horse's claims against Lincoln County are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Whirl Wind Horse's claims against Wasko, Reyes, Eilers, Archambeau, Nixon, Nelson, and Shelburg in their official capacities for money damages are dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). It is further

ORDERED that Whirl Wind Horse's First Amendment access to the courts claims against Wasko, Reyes, Eilers, Archambeau, Nixon, and Shelburg in their individual capacities for money

damages and their official capacities for injunctive and declaratory relief survive § 1915A screening. It is further

ORDERED that Whirl Wind Horse's Eighth Amendment failure to protect claim against Wasko, Reyes, Eilers, Archambeau, Nixon, and Shelburg in their individual and official capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Whirl Wind Horse's Eighth Amendment deliberate indifference to serious medical needs claims against Nelson and Shelburg in their individual and official capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Whirl Wind Horse's Fourteenth Amendment due process claims for EDCs are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Whirl Wind Horse's Fourteenth Amendment equal protection claims for denying participation in CBISA and MRT are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Whirl Wind Horse's Motion to Timely Demand Jury Trial, Doc. 2, is denied as moot. It is further

ORDERED that Whirl Wind Horse's Motion for Notice to Adverse Party that Plaintiff Will File Preliminary Injunction and TRO, Doc. 5, is denied without prejudice.

ORDERED that the Clerk shall send blank summons forms and United States Marshals Service Forms (Form USM-285) to Whirl Wind Horse so that he may complete the form to cause

the complaint to be served upon Defendants Wasko, Reyes, Eilers, Archambeau, Nixon, and Shelburg. It is further

ORDERED that Whirl Wind Horse shall complete and send the Clerk of Court a separate summons and USM-285 form for each Defendant within **thirty days from the date of this Court's screening order**. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses, together with a copy of the complaint, Doc. 1, and this order upon the Defendants. It is further

ORDERED that Defendants serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the Defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that Whirl Wind Horse keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by this Court's Civil Local Rules while this case is pending.

DATED February 14ᵗʰ, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

22